### RUFUS LOCKWOOD *vs.* JUDAH L. TRACY.

*A* mortgaged certain premises to *B*, and afterwards leased a portion of them to *D*. *B* afterwards obtained a decree of foreclosure against *A* and certain subsequent incumbrancers, fixing the first Monday of August as the time of

Lockwood v. Tracy.

redemption for *A* and the first Monday of October as the last day for the other respondents. *B* also obtained a judgment in ejectment against *A* at the same term of the court. *B* died after the decree was passed but before August 1st, and his executors on the 8th of August gave notice to *D* that he must hold under them and pay rent to them, to which he agreed. None of the respondents redeemed. On the 1st of October a quarter's rent was due from *D* and he paid to the executors that part of it accruing after the 8th of August. In an action for the quarter's rent, brought by *A* against *D*, it was held—

1. That the executors of *B*, having under the statute a right to the possession and control of his real estate during the settlement of his estate, had a right to require of *D* that he should hold under them and pay the rent to them.

2. That their right to the possession of the mortgaged property was not suspended or in any way affected by the fact that the court had limited a time for redemption.

3. That it was not necessary that the judgment in ejectment recovered by *B* in his life time should be revived, the right of the executors to the possession being wholly independent of it.

4. That under the agreement of *D* to hold under them they became entitled to the after-accruing rents, and that *A* could not recover them.

Assumpsit for rent for the use and occupation of certain premises; brought to the Court of Common Pleas of Fairfield County, and tried to the court, on the general issue, before *Hall, J.*

The suit was brought by the plaintiff as assignee of one Seeley. Seeley between the years 1866 and 1873 had made several mortgages, embracing the premises in question, to one Hubbard, and had made later mortgages in 1874 and 1875 to one Daskam and one Godfrey. Prior to July, 1876, Seeley leased by parol a portion of the mortgaged premises to the defendant Tracy, the lease to commence July 1st. In December, 1875, Hubbard brought a bill for a foreclosure against Seeley and the later mortgagees, and in January following obtained a decree, fixing the first Monday of August, 1876, as the limit for redemption by Seeley, and the first Mondays of September and October for redemption by Daskam and Godfrey respectively. He also at the same term of the court obtained a judgment in ejectment against Seeley. Hubbard died in March, 1876. Seeley did not redeem on or before the first Monday of August, and on the 8th of August Hubbard's executors notified him that he must hold as their tenant and pay the rent to them, which he agreed to do. None of the

respondents redeemed and on the first Monday of October, 1876, the title to the premises became absolute under the decree. On the first of October there was rent due from the defendant for the three months from July 1st. The executors demanded of the defendant the rent accruing after the 8th of August, and he paid it to them.

Seeley afterwards demanded of the defendant the rent for the same period, which the latter refused to pay. He afterwards assigned the claim to the plaintiff, who brought the present suit.

Between the first Monday of August and the first Monday of October, 1876, the executors entered upon the premises, claiming that they belonged to them, and repaired the chimneys and roof.

Upon these facts the court rendered judgment for the defendant, and the plaintiff moved for a new trial.

*J. B. Curtis,* in support of the motion.

1. A mortgagor until his right of redemption is foreclosed continues the owner of the mortgaged premises, not accountable for the rents and profits thereof, and is fully entitled to the same. *Cooper* v. *Davis,* 15 Conn., 556. And after a decree of foreclosure he may redeem a subsequent mortgagee and avail himself of such mortgagee's equity of redemption. *Goodman* v. *White,* 26 Conn., 321, 323. Therefore Seeley had the right of redemption until the first Monday of October, 1876, and the lawful right to remain in possession and to take the rents and profits until that day. The mortgagee before foreclosure is entitled at common law, upon the non-fulfillment of the mortgage condition, to enter for the breach and to recover in ejectment. Therefore he has a right to turn not only the mortgagor, but also a tenant under a lease made subsequent to the mortgage, out of possession. But the tenant in order to prevent such eviction may become the tenant of the mortgagee by attornment. It is therefore clear that the right of the tenant to attorn to the mortgagee is based solely on his being liable to be treated by the mortgagee as a tort-feasor. *Jones* v. *Clark,* 20 Johns., 51, 62; *Magill* v.

*Hinsdale*, 6 Conn., 469. If this view is correct where the mortgagee has no right to evict the tenant has no right to attorn. In the case at bar the mortgagee during the time limited for redemption in the decree of ·foreclosure had no right to evict. First, because a decree of foreclosure operates to relieve the mortgagor against the legal effect of the forfeiture during the time limited by the decree, which in the present case was· the first Monday of October, 1876. 2 Swift Dig., 179. Second, because when an action of disseizin and a petition to foreclose are brought at the same time, and upon the same mortgage, the action of the Superior Court, both as a court of law and court of equity, should and always does ·coincide. It would be inconsistent to limit a time for·redemption and at the same time allow execution to issue on the judgment in ejectment to put the mortgagor out of the possession before the period of limitation had expired. It would be unjust to allow the mortgagee to obtain full payment of the mortgage debt by foreclosure, as he might, and then to give him the rent of the premises without the liability of accounting for them. The execution is always stayed by ·order of the court. But it is equally stayed by the operation ·of ·the decree, as in the case at bar, which provides in effect ·that if the costs of the action of ejectment are paid on or before the last law day, together with the amount found due ·under the 'foreclosure, the mortgagor shall forfeit none of his rights,·and the party claiming under such judgment in ejoct-·ment and such decree has no right to evict the mortgagor by ·his·execution in ejectment.

2. Where the mortgagee, after obtaining a decree of fore-·closure and judgment in ejectment, pending the time limited in the decree dies, have his executors the right to evict the tenants who ·hold subsequent to the execution of the mort-·gage, and ·in consequence of such right have the tenants the ·right to attorn to the executors in order to prevent such evic-·tion ? The rule upon this question is, that the mortgage is ·merely·a·chattel ·interest in the hands of the executor, and ·vests in him the sole right to foreclose the mortgage for the purpose of ·collecting ·the ·mortgage debt. *Roath* v. *Smith*, 5

Conn., 133; 1 Swift Dig., 444. The right of entry for breach of the condition of the mortgage is a right descending to the heir, and he only can take advantage of it, and not the executor. 2 Powell on Mort., 686. Notwithstanding the mortgagor is viewed in the law as holding the legal estate for many purposes, he is not so viewed generally as against the mortgagee and those claiming under him after a forfeiture. They may maintain ejectment and defend themselves if in possession under the mortgage, the tenant of the mortgagor may attorn to the mortgagee, and this interest or estate of the mortgagee descends to the heir, it being for the above purposes the legal estate, and the heir must bring ejectment if the mortgagee die out of possession. The heir represents the realty. *Van Duyne* v. *Thayre*, 14 Wend., 256. The heir being only entitled to enter for a breach of the condition of the mortgage, he only, and not the executor, can evict the tenant, and the tenant can only attorn to the heir to prevent such eviction.

3. It is claimed that the executor under our statute, (Gen. Statutes, 392, sec. 28,) has a right to the rents and profits of the estate, and therefore he has a right to evict the tenant. This statute has reference only to real estate of which the deceased died in the actual possession. It has no reference to estates acquired for condition broken, where the heir and the heir alone has the right of entry. It has no reference whatever to a deceased mortgagee's interest in a mortgage where the mortgagor is in the actual possession of the estate, and therefore no application to the present case. Besides, the executor has no power to bring ejectment under this statute. He has no such exclusive and permanent interest as will enable him to do so. He may be ousted at any time by an order of the court of probate. 1 Swift Dig., 507. At common law he was entitled to the emblements, he was also entitled to the possession of the land to such an extent as would enable him to protect and settle the estate of the deceased, but this gave him no right to bring ejectment. 1 Swift Dig., 445.

*S. Fessenden,* contra.

GRANGER, J. The main question in this case is substantially disposed of in the cases of *Rockwell* v. *Bradley*, 2 Conn., 1, *Wakeman* v. *Banks*, 2 Conn., 445, and *Magill* v. *Hinsdale*, 6 Conn., 464. The case last cited holds distinctly and unequivocally that "a tenant of a mortgagor in possession after the mortgage has become forfeited, may attorn to and take a lease from the mortgagee, after which he will be liable to the mortgagee for the rent during the continuance of the lease." In this case PETERS, J., says, in delivering the opinion of the court, (page 469:) "It is a general rule that a tenant cannot deny the title of his landlord. But the defendants have not done nor attempted such an act. They had merely attorned to their lord paramount. If the legal estate passed to the bank by the mortgage executed by the plaintiff, (he had executed the mortgage as agent of the Middletown Manufacturing Company,) he acquired the equity of redemption only by the levy of his execution. His tenants were liable to be treated as tort-feasors, which they might lawfully avoid by submitting to the claim of the mortgagee." Judge PETERS also cites with approval *Jones* v. *Clark*, 20 Johns. Reps., 51, in which it was decided by the Supreme Court of New York that the tenant of a mortgagor in possession, after the mortgage has become forfeited during the continuance of the lease from the mortgagor, may attorn to and take a lease from the mortgagee, and in an action brought against him by the mortgagor for rent under his lease he may set up such attornment as a legal defence. The case at bar is stronger than the cases cited, from the fact that in it there has been a foreclosure by the mortgagee, and the mortgagor has been decreed by the judgment of the Superior Court to be forever barred of all right to redeem the mortgaged premises after the first Monday of August, 1876.

The mortgagee also had obtained judgment in ejectment against the mortgagor. Albert Seeley, the mortgagor, and the assignor of the plaintiff Lockwood, when he assigned the claim in suit had, as against the mortgagee, Alexander Hubbard, no legal or equitable title to the premises and no right to the rents accruing therefrom; and the plaintiff took

nothing by his assignment of the rent, unless his claim is correct that the executors of Hubbard had no right to receive the rent from Tracy the defendant, and that Seeley had the right to hold possession and receive the rent till the expiration of the last law day, namely, the first Monday of October, 1876, the time limited for Daskam to redeem. Neither of these claims of the plaintiff can be sustained. The fact of Hubbard's death can neither increase nor diminish the rights of Seeley, nor change his status in respect to the property as fixed and determined by law and the decree of the Superior Court. He had no greater rights after than before the death. His rights as mortgagor were fixed when he executed the first mortgage deed, and those rights were protected and secured by the court in its decree of foreclosure and judgment in ejectment.

The mortgagee Hubbard, even before the foreclosure and judgment in ejectment, had the legal right to the possession of the mortgaged premises. At the time of his decease he had both the legal and equitable right to possession, and if he could obtain possession peaceably had a clear right to do so. This right was not suspended or in any way affected by the fact that the court had limited a time for redemption.

But it is claimed by the plaintiff that the executors of Hubbard have no right to the possession of the mortgaged premises; that only his heirs could enter; and that therefore the defendant had no right to attorn to the executors. It is also claimed that as their right to enter, if at all, was as representatives of Hubbard, they ought to have brought a scire facias for the revival of the judgment in ejectment in his favor, which could not otherwise be enforced. But their right to demand possession and the rents did not depend at all upon the judgment in ejectment. They had that right as representatives of Hubbard just as he would have had it himself. It is entirely clear that the defendant was justified in recognizing their rights when they asserted them, and paying the subsequently accruing rents to them. They were entitled by statute (Gen. Statutes, page 392, sec. 28,) to have the possession, care and control of the real estate of their decedent,

and all the products and income of such real estate vested in them in the same manner as personal property during the settlement of the estate. At the time of the attornment the executors might well treat the mortgaged premises as real estate belonging to Alexander Hubbard. The law day of Seeley had expired, and the estate in justice and equity ought to have the full benefit of the property pledged or the money for which it stood pledged. The attornment worked no injury to Seeley. If he had determined to redeem Godfrey and Daskam, the fact that the executors of Hubbard were in actual possession of the premises, or that Tracy had attorned to them as his lord paramount, could in no way interfere with his redeeming the subsequent mortgages, and if he had so redeemed and then tendered to the executors in the name and stead of Godfrey and Daskam the amount due the estate of Hubbard, less the amount of rents and profits received by the executors, undoubtedly they would have been ready and willing to receive such amount and release their claims.

But no such attempt or offer was made by Seeley, and it is apparent that he had no intention of redeeming, as the case finds no effort made by him in that direction. The attornment was properly made by Seeley, and properly received by the executors.

A new trial is not advised.

In this opinion the other judges concurred.